## BANK OF AMERICA NAT. TRUST & SAV. ASS'N v. ADAIR.
### No. 8350.

Circuit Court of Appeals, Ninth Circuit.
June 7, 1937.
Rehearing Denied July 26, 1937.

Louis Ferrari, of San Francisco, Cal., and Edmund Nelson and Hugo A. Steinmeyer, both of Los .Angeles, Cal., for appellant.

N. C. Peters, of San Bernardino, Cal., for appellee.

Before WILBUR, GARRECHT, and MATHEWS, Circuit Judges.

MATHEWS, Circuit Judge.

This appeal is from an order settling and allowing an account rendered by appellee in a proceeding [1] under section 75 of the Bankruptcy Act (11 U.S.C.A. § 203).[2]

Appellee is a conciliation commissioner for San Bernardino county, Cal., appointed under and pursuant to subsection (a) of section 75, supra.[3] His powers and duties are, in general, those of a referee in bankruptcy. General Orders in Bankruptcy, Rule L, par. 11, 288 U.S. 644 (11 U.S.C.A. following section 53).[4] These powers and duties are specified in sections 38 and 39 of the Bankruptcy Act, 30 Stat. 555 (11 U.S.

---

[1] A detailed history of this proceeding will be found in Bank of America National Trust & Savings Ass'n v. Cuccia (C.C.A.9) 90 F.(2d) 100, decided May 4, 1937.

[2] Section 75, comprising subsections (a) to (r), inclusive, was added to the Bankruptcy Act by the Act of March 3, 1933, § 1, c. 204, 47 Stat. 1470–1473. Subsections (a) and (b) were amended by the Act of June 7, 1934, c. 424, §§ 8 and 9, 48 Stat. 925 (11 U.S.C.A. § 203 (a, b). Subsection (s) was added to section 75 by the Frazier-Lemke Act of June 28, 1934, c. 869, 48 Stat. 1289–1291. Subsection (r) was amended by the Act of May 15, 1935, c. 114, § 3, 49 Stat. 246 (11 U.S.C.A. § 203(r). Subsections (b), (g), (k), (n), (p), and (s) were amended by the new Frazier-Lemke Act, August 28, 1935, . c. 792, §§ 1–6, 49 Stat. 942–945 (11 U.S.C.A. § 203(b, g, k, n, p, s).

[3] Subsection (a) provides: "Within thirty days after the enactment of this Act [June 7, 1934], every court of bankruptcy of which the jurisdiction or territory includes a county or counties having an agricultural population . . . of five hundred or more farmers shall appoint one or more referees to be known as 'conciliation commissioners,' one such conciliation commissioner to be appointed for each county." 48 Stat. 925, 11 U.S.C.A. § 203(a).

[4] By subsection (b) of section 75, 47 Stat. 1470, the Supreme Court was authorized to make such general orders as it might find necessary properly to govern the administration of the office of conciliation commissioner and proceedings under section 75. Pursuant to said authorization, the Supreme Court on April 17, 1933, adopted Rule L as an addition to the general orders in bankruptcy. 288 U.S. 621, 636, 641–644 (11 U.S.C.A. following section 53). Paragraph 11 of Rule L provides: "Insofar as is consistent with the provisions of section 75 (11 U.S.C.A.

C.A. §§ 66, 67) [5] and in Rule XII of the General Orders in Bankruptcy, 288 U.S. 623 (11 U.S.C.A. following section 53).[6]

On August 4, 1934, Andrea Cuccia, a farmer residing in San Bernardino county, Cal., proceeding under subsection (c) [7] of section 75, filed his petition stating that he was insolvent or unable to meet his debts as they matured, and that he desired to effect a composition or extension of time to pay his debts. Thereupon, pursuant to paragraph 2 of Rule L,[8] the District Judge approved the petition and referred the matter to appellee.

Cuccia did not surrender his property to appellee, but continued in possession thereof. His property consisted of a tract of land in San Bernardino county and a crop of grapes growing thereon. Appellant held a deed of trust, with power of sale, covering the land, and a crop mortgage [9] covering the crop, both of which were given to secure Cuccia's promissory note, held by appellant, for $11,850, with interest. Both had been duly recorded in San Bernardino county and were referred to in the schedules accompanying Cuccia's petition. Appellee, at the time this matter was referred to him and at all times thereafter, had actual as well as constructive knowledge of the deed and mortgage.

The mortgage obligated Cuccia to cultivate and harvest the crop, prepare it for market and, when so prepared, to deliver it to appellant, who, by the mortgage, was empowered to sell and dispose of the crop at the then market price and apply the proceeds to the payment of the indebtedness secured thereby. The mortgage provided that if Cuccia failed to perform any act which the mortgage obligated him to perform, appellant might perform such act and, in so doing, might expend such sums as it deemed necessary, and that all sums so expended should be immediately due and payable by Cuccia to appellant, and should be secured by the mortgage.

Prior to the filing of Cuccia's petition, his note had fallen due and had not been paid. Appellant had filed the notice required by section 2924 of the California Civil Code (as amended by St.1933, p. 1669),[10] and the trustee named in the

§ 203) and of this general order, the conciliation commissioner shall have all the powers and duties of a referee in bankruptcy and the general orders in bankruptcy shall apply to proceedings under said section. . . . " 288 U.S. 644; 11 U. S.C.A. following section 53.

[5] Section 38 provides: "Referees respectively are hereby invested, subject always to a review by the judge, within the limits of their districts as established from time to time, with jurisdiction to . . . (4) perform such part of the duties, except as to questions arising out of the applications of bankrupts for compositions or discharges, as are by this Act [title] conferred on courts of bankruptcy and as shall be prescribed by rules or orders of the courts of bankruptcy of their respective districts, except as herein otherwise provided." 30 Stat. 555; 11 U.S.C.A. § 66.

[6] Rule XII provides: "The order referring a case to a referee shall name a day upon which the bankrupt or debtor shall attend before the referee. . . . And thereafter all the proceedings, except such as are required by the Act or by these general orders to be had before the judge, shall be had before the referee." 288 U.S. 623; 11 U.S.C.A. following section 53.

[7] Subsection (c) provides: "At any time within five years after this section takes effect [March 3, 1933], a petition may be filed by any farmer, stating that the farmer is insolvent or unable to meet his debts as they mature, and that it is desirable to effect a composition or an extension of time to pay his debts. The petition . . . of the farmer shall be accompanied by his schedules. . . . " 47 Stat. 1471, 11 U.S.C.A. § 203(c).

[8] Paragraph 2, Rule L, provides: "Upon the filing of the petition the judge shall enter an order either approving it as properly filed, . . . or dismissing it for want of jurisdiction. If the petition is approved, the case shall be referred . . . to a conciliation commissioner. . . . " 288 U.S. 641; 11 U.S.C.A. following section 53.

[9] Section 2955 of the Civil Code of California provides: "Mortgages may be made upon all growing crops, including grapes and fruit. . . . "

[10] Section 2924 provides: ". . . Where, . . . in any transfer in trust . . . of [any estate in real property] to secure the performance of an obligation, a power of sale is conferred upon the . . . trustee, . . . to be exercised after a breach of the obligation for which such . . . transfer is a security, such power shall not be exercised . . . until (a) the trustee . . . or beneficiary, shall first file for record, in the office of the recorder of each county wherein the . . . trust property or some part . . . thereof is situated, a notice

deed of trust had advertised the land for sale on October 3, 1934, but was prevented from making such sale by the filing of Cuccia's petition, which, under subsection (o) [11] of section 75, precluded any such sale and precluded appellant from instituting or maintaining any action on Cuccia's note or any proceeding for the foreclosure or enforcement of its crop mortgage, except upon leave granted by the District Judge. No such leave appears to have been granted or applied for.

After filing his petition and after reference of this matter to appellee, Cuccia harvested the mortgaged crop above referred to and prepared it for market, but instead of being delivered to appellant, as required by the mortgage, the crop was marketed by appellee or by Cuccia under appellee's direction, and the proceeds, amounting to $1,437.37, were deposited in a bank in the name of Cuccia and appellee.

Having failed to obtain acceptance of his composition or extension proposal, Cuccia on January 7, 1935, filed an amended petition praying to be adjudged a bankrupt, pursuant to subsection (s) [12] of section 75 (Frazier-Lemke Act of June 28, 1934, c. 869, 48 Stat. 1289–1291), and, on the same day, the District Judge made such adjudication and referred the matter to D. W. Richards, referee in bankruptcy. Thereafter, on October 14, 1935, this proceeding was dismissed. Bank of America National Trust & Savings Ass'n v. Cuccia (C.C.A.9) 90 F.(2d) 100, decided May 4, 1937. With its subsequent reinstatement, we are not here concerned.

On October 17, 1935, the trustee named in the trust deed sold the land therein described and credited the proceeds on Cuccia's note. After this was done, there still remained an unpaid balance of $4,934.68. On February 6, 1936, appellant obtained an order requiring appellee to account for the proceeds of the mortgaged crop harvested by Cuccia in 1934. On February 17, 1936, appellee filed his account, showing receipt by him of $1,437.37 as proceeds of the mortgaged crop, disbursements therefrom amounting to $1,401.68, and a balance of $35.69 remaining in the bank.

Amounts shown to have been disbursed by appellee were $1,290.33 to Cuccia for labor performed and expenses incurred by Cuccia in cultivating and harvesting the mortgaged crop; $20 to Cuccia for payment of a "filing fee under section 75(s)"; $18.-25 to D. W. Richards, referee, as an "indemnity fee under section 75(s)"; $22.50 to Joseph E. Rich, court reporter, for taking testimony at a meeting of Cuccia's creditors held before the referee on February 14, 1935; $50 to Cuccia's attorney, Ralph W. Eckhardt, for services rendered to Cuccia in this proceeding; and 60 cents for "taxes, etc.," this item being otherwise unexplained. Appellant had no notice or knowledge of these disbursements.

Appellant objected to appellee's account, on the ground that appellant was entitled to the entire proceeds of the mortgaged crop, and that the disbursements made by appellee were made without appellant's knowledge or consent and were unauthorized and improper. The District Court, after hear-

---

. . . identifying the . . . deed of trust . . . and giving the book and page where the same is recorded or a description of the . . . trust property and containing a statement that a breach of the obligation for which such . . . transfer in trust is security has occurred, . . . and of his election to sell or cause to be sold such property to satisfy the obligation; (b) not less than three months shall thereafter elapse; and (c) the . . . trustee . . . shall give notice of . . . the time and place thereof. . . . ."

[11] Subsection (o) provides: "Except upon petition made to and granted by the judge . . . the following proceedings shall not be instituted, or if instituted . . . shall not be maintained . . . against the farmer or his property, at any time after the filing of the petition under this section, and prior to the confirmation or other disposition of the composition or extension proposal by the court:

"(1) Proceedings for any demand, debt, or account . . . ;

"(2) Proceedings for foreclosure of a mortgage on land . . . ;

. . . . . .

"(6) Seizure, distress, sale or other proceedings . . . under any . . . chattel mortgage, . . . crop payment agreement, or mortgage." 47 Stat. 1472, 11 U.S.C.A. § 203(o).

[12] Subsection (s), as it then existed, provided as follows: "Any farmer failing to obtain the acceptance of a majority in number and amount of all creditors whose claims are affected by a composition or extension proposal . . . may amend his petition . . . asking to be adjudged a bankrupt. . . . . . . 48 Stat. 1289.

ing, overruled appellant's objections and ordered that appellee's account be settled and allowed.

█ This order must be reversed. The entire proceeds of the mortgaged crop belonged to appellant. Appellant was under no obligation to cultivate or harvest the crop or to pay Cuccia for doing so. Cuccia was expressly obligated to do these things himself, at his own expense. No conciliation commissioner, trustee, referee, judge, or court could impose this obligation on appellant. Appellee, therefore, could not be and was not authorized or empowered to pay Cuccia, with appellant's money, for performing this obligation. What appellee could or should have done had Cuccia failed to perform this obligation, it is unnecessary to decide, since there was, in fact, no such failure.

█ There was, if possible, even less excuse for disbursing appellant's money in payment of fees and costs said to have been expended or incurred in this proceeding. Cuccia and his creditors, including appellant, were, by subsection (b) [13] of section 75, expressly exempted from paying any such fees or costs. Since these fees and costs were not chargeable to appellant, appellee could not be and was not authorized or empowered to pay them with appellant's money.

█ Subsections (e) [14] and (n) [15] of section 75, cited by appellee, do not warrant or justify the disbursements here complained of. In exercising the powers which these subsections confer, a court of bankruptcy may not ignore or disregard, but must recognize and protect, the rights of mortgagees. The District Court should have disallowed appellee's account and should have required appellee to pay to appellant the full sum of $1,437.37.

Order reversed and case remanded for further proceedings in conformity with this opinion.

---

[13] Subsection (b) provides: "No fees, costs, or other charges shall be charged or taxed to any farmer or his creditors by any conciliation commissioner or with respect to any proceeding under this section, except as hereinbefore in this section provided. . . ." 47 Stat. 1471, 11 U.S.C.A. § 203(b). There is no exception covering any of the disbursements here complained of.

[14] Subsection (e) provides: ". . . . After the filing of the petition and prior to the confirmation or other disposition of the composition or extension proposal by the court, the court shall exercise such control over the property of the farmer as the court deems in the best interests of the farmer and his creditors." 47 Stat. 1471, 11 U.S.C.A. § 203(e).

[15] Subsection (n), as it existed when Cuccia's petition was filed, provided as follows: "The filing of a petition pleading for relief under this section shall subject the farmer and his property, wherever located, to the exclusive jurisdiction of the court. In proceedings under this section, except as otherwise provided herein, the jurisdiction and powers of the court, the title, powers, and duties of its officers, the duties of the farmer, and the rights and liabilities of creditors, and of all persons with respect to the property of the farmer and the jurisdiction of the appellate courts, shall be the same as if a voluntary petition for adjudication had been filed and a decree of adjudication had been entered on the day when the farmer's petition . . . was filed." 47 Stat. 1473.